IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Reginald Osborne, ) | Civil Action No. 7:13-11-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| Suminoe Textile of America ) | |
| Corporation, ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff alleges that the defendant, his former employer, violated the Family and Medical Leave Act ("FMLA") by interfering with his right to reinstatement and retaliating against him for exercising his rights under the FMLA.. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

On January 2, 2013, the plaintiff filed his complaint, and on January 25, 2013, the defendants filed a motion to dismiss, which the district court granted in part and denied in part on June 13, 2013. Specifically, the motion was granted as to the plaintiff's claim for punitive damages and denied as to all other claims (doc. 20). On February 11, 2014, the defendant filed a motion for summary judgment (doc. 36). On February 28, 2014, the plaintiff filed a response in opposition (doc. 37), and on March 10, 2014, the defendant filed its reply (doc. 42).

## **FACTS PRESENTED**

The plaintiff began working for the defendant on October 29, 2007, as a forklift operator in the defendant's warehouses (doc. 36-2, pl. dep. 16, 32-33). The plaintiff's job duties consisted mostly of driving a forklift to unload deliveries into the warehouse and moving products used in the defendant's manufacturing processes around the warehouse (*id.* 39-40). The plaintiff's direct supervisor at the time of his termination and during most of his employment was Bobby Richardson (*id.* 20, 63). The plaintiff always got along well with Mr. Richardson (*id.* 20). Mr. Richardson's supervisor was Tim Gaddy, the Warehouse Manager, who oversaw all of the defendant's warehouses (doc. 36-3, Richardson dep. 11; doc. 36-4, Gaddy dep. 4-6). Kathie Ledford is the defendant's Human Resources Manager (doc. 36-5, Ledford dep. 4-5).

On Wednesday, May 2, 2012, the plaintiff reported that he injured his back "wiggling" a bale of fiber (doc. 36-2, pl. dep. 65-66) No one witnessed the plaintiff's on-the-job injury (*id.* 66). The defendant appointed Mr. Richardson to drive the plaintiff to the local emergency room for his injury because the defendant's regular doctor's office was closed (*id.* 67 & ex. 10). The plaintiff was seen by a doctor within a few hours who, after examining the plaintiff, discharged him with instructions to "take medications as prescribed, drink plenty of fluids and follow up with Dr. Bland in the next couple of days" (*id.* 68-69, 71-73 & ex. 5). The plaintiff provided his medical records to Mr. Richardson on May 2nd upon his discharge from the hospital (doc. 37-2, pl. aff. ¶ 5), and Mr. Richardson passed the records on to Ms. Ledford (doc. 37-4, Richardson dep. 28-29). The paperwork states the plaintiff was "discharged to home" with prescriptions for naproxen sodium 550 for pain and cyclobenzaprine for muscle spasms (doc. 37-2 at 0073).

According to the plaintiff, upon returning to work from the emergency room, he discussed with Mr. Richardson his continuing pain, his regimen of pain and muscle spasm medication, and his need to go home (doc. 36-2, pl. dep. 73; doc. 37-2, pl. aff. ¶ 6). Mr. Richardson instructed the plaintiff to stay at work until the end of his shift because, if he left, it would count as a lost time accident. The plaintiff clocked-out and left work (doc.

36-2, pl. dep. 92-93; doc. 36-3, Richardson dep. 44; doc. 36-4, Gaddy dep. 22-23; doc. 36-5, Ledford dep. 21-22). According to Human Resources Manager Ledford, Mr. Richardson could have terminated the plaintiff on May 2, 2012, for insubordination, but he did not do so (doc. 36-5, Ledford dep. 25).

The following morning, on Thursday, May 3, 2012, the plaintiff called Mr. Richardson and left a voicemail message stating that he was not coming to work that day (doc. 36-3, Richardson dep. 35-37; doc. 36-2, pl. dep. 74). The plaintiff did not call Mr. Richardson or anyone else with the defendant after leaving the message on May 3, 2012 (doc. 36-2, pl. dep. 74). The plaintiff testified in his deposition that his voicemail message also informed Mr. Richardson that he was in pain, that he was going to the doctor the following day (Friday, May 4th), and that he would return to work on Monday, May 7th (*id.* 74-77). According to the plaintiff, the reason he could not attend work all day on Friday, May 4th was that his prescription medicine made him "loopy," but the plaintiff did not provide this excuse to Mr. Richardson (*id.* 76). Mr. Richardson's written account, made a few days after the voicemail message, stated that the plaintiff called in on May 3rd and left a message "that he would not be in because his back was still hurting. He did not call or come in on Friday or Saturday" (*id.* ex. 10).

According to the defendant, Saturday, May 5th was a scheduled workday for the plaintiff and all warehouse employees (doc. 36-3, Richardson dep. 30-32; doc. 36-4, Gaddy dep. 26-29; doc. 36-5, Ledford dep. 36-37). Mr. Richardson and Mr. Gaddy both worked on May 5th (doc. 36-3, Richardson dep. 39-40; doc. 36-4, Gaddy dep. 35). Mr. Gaddy testified in his deposition that, prior to the plaintiff's injury, he held a meeting of all warehouse employees to inform them of a new schedule with extended hours Monday through Friday and mandatory Saturdays (doc. 36-4, Gaddy dep. 28-29; doc. 36-3, Richardson dep. 30-31; doc. 36-5, Ledford dep. 36-37). According to Mr. Gaddy, the plaintiff was at the meeting and made an obscene comment objecting to the new schedule (doc. 36-4, Gaddy dep. 28-29). Notice of the extended schedule was also posted over the time clock for all employees to see (doc. 36-3, Richardson dep. 34; doc. 36-4, Gaddy dep.

3

28-29). Prior to the new schedule, Mr. Gaddy would ask for volunteers to work on a particular Saturday, and if he did not get enough volunteers to do the work that needed to be done, work on that Saturday would be mandatory (doc. 36-4, Gaddy dep. 26-7). Mr. Gaddy instituted the new schedule after the warehouse employees complained about having to work overtime without being able to predict how late they would have to work each day or whether or not they would have to work on Saturdays (*id.*).

The plaintiff testified that the warehouse employees had to work as late as 5:00 p.m. or 6:00 p.m., that they had to work some Saturdays, and that they were upset about not knowing how late they might have to work each day (doc. 36-2, pl. dep. 50-52). The plaintiff testified in his deposition that he does not know whether or not Saturday, May 5th was a scheduled workday, and he called no one to find out (*id.* 77-78). In his affidavit, the plaintiff stated that, at the time of his termination from employment by the defendant, working on Saturdays was voluntary, and he was never told that he had to work on Saturdays (doc. 37-2, pl. aff. ¶ 4).

The plaintiff did not call in or report to work on May 4th or May 5th. No one called the plaintiff on behalf of the defendant to check on him or to determine any further basis for his absence (doc. 37-4, Richardson dep. 37; doc. 37-2, pl. aff. ¶ 7). When the plaintiff returned to work on May 7th, the defendant terminated his employment for violation of the no call no show policy (doc. 36-4, Gaddy dep. 35-36; doc. 36-2, pl. dep. 111 & ex. 9). The first topic the defendant covers in its orientation is attendance, and it emphasizes the no call no show policy specifically because it can result in termination for a first offense (doc. 36-5, Ledford dep. 20). The plaintiff knew that one no call no show could result in termination of employment (doc. 36-2, pl. dep. 65, 110; doc. 37-2, pl. aff. ¶ 1). According to Mr. Richardson, employees were required to call in each day of their absence (doc. 36-3, Richardson dep. 24). In his affidavit, the plaintiff stated that he understood that the policy allowed him to call in once when he knew he would be out for multiple days (doc. 37-2, pl. aff. ¶ 1). He further stated that several times during his employment he called in only once to notify the defendant that he would be out for multiple days due to a prior medical

4

condition, and he was never told that he should call in every day of a multiple day absence (*id.* ¶ 2). In her deposition, Ms. Ledford testified that an employee would not be expected to call in every day if he let the defendant know ahead of time the number of days he would be out (doc. 37-5, Ledford dep. 7).

Mr. Richardson testified in his deposition that "[i]t was probably Saturday" that he and Mr. Gaddy made the decision to terminate the plaintiff's employment for violation of the no call no show policy, but he was "not 100 percent sure" (doc. 36-3, Richardson dep. 39-40). Mr. Gaddy testified that he and Mr. Richardson discussed on Saturday, May 5th, the plaintiff's no call no show and that they were going to terminate his employment (doc. 36-4, Gaddy dep. 35).

Upon his return to work on Monday, May 7th, the plaintiff provided the defendant with a note from his doctor's visit on May 4th (doc. 36-2, pl. dep. 79-80; doc. 36-3, Richardson dep. 42). The note from the plaintiff's nurse practitioner, Jill Knox, excused the plaintiff from work from May 2nd through May 4th (doc. 36-2, pl. dep. ex. 7). The note further limited the plaintiff to "no lifting more than 10 pounds" and "no repetitive bending, squatting, . . . pushing/pulling with body" (*id.*). The note did not mention Saturday, May 5th, but stated that the plaintiff could return to work on May 7th (*id.*; doc. 36-4, Gaddy dep. 36; doc. 36-5, Ledford dep. 35-36). The plaintiff did not tell Ms. Knox that he had to, or might have to, work on May 5th, or that he had been working on some Saturdays (doc. 36-2, pl. dep. 83-84). Mr. Gaddy testified that when the plaintiff brought in a doctor's note on Monday morning, he sent it to Ms. Ledford and discussed with her the termination of the plaintiff's employment (doc. 36-4, Gaddy dep. 36). According to Mr. Gaddy, he was told there "shouldn't be any problem with it" (*id.*). The plaintiff was terminated at 12:50 p.m. on Monday, May 7th (doc. 37-6, Gaddy email to Ledford).

The plaintiff testified in his deposition that he had "no reason to believe that [violation of the no call no show policy] was not the reason for [his] termination" (doc. 36-2, pl. dep. 111). In his affidavit submitted in opposition to the motion for summary judgment,

the plaintiff stated that he believes he was terminated from employment because he "was injured at work and needed time off to take care of this injury" (doc. 37-2, pl. aff. ¶ 9).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***FMLA Interference***

The plaintiff alleges that the defendant interfered with his right to reinstatement after returning from FMLA leave. The FMLA allows certain employees to take "12 workweeks of leave" during a twelve-month period for "a serious health condition" that makes the employee "unable to perform the functions of" his job. 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA, *id.* § 2615, and an employee has a cause of action against his employer under § 2617 when he can prove the employer interfered with his exercise of FMLA rights and caused prejudice thereby. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). "To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F.Supp.2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir.2006); 29 U.S.C. § 2615(a)(1)).

The defendant first argues that the plaintiff was not entitled to leave under the FMLA. A "serious health condition" for purposes of the FMLA is defined as "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). "Continuing treatment" is defined as a period of incapacity of more than three consecutive, full calendar days and either: (1) treatment two or more times by a health care provider, within 30 days of incapacity; or (2) at least one occasion of treatment by a health care provider that results in a regimen of continuing treatment by a health care provider. *Id.* § 825.115(a). The term "incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b).

7

Viewing the evidence in a light most favorable to the plaintiff, he has presented evidence creating an issue of material fact as to whether he was entitled to leave under the FMLA. When he returned from the emergency room on May 2nd, the plaintiff told Mr. Richardson that he needed to go home because his back was hurting and he needed to get his prescribed medication. On May 3rd, he called Mr. Richardson and left a message telling him that he was still in pain, he would be going to his primary care doctor the next day, and he would return to work on Monday. When he returned to work on May 7th, he provided a doctor's note excusing him from work from May 2nd through the 4th and stating he could return to work that day with activity restrictions that included "no pushing/pulling with body" and "no lifting more than 10 pounds" (doc. 36-2, pl. dep. ex. 7). The note further stated he would be re-evaluated on May 11th (*id.*). As noted by the plaintiff, he was injured moving 150 pound fiber bales around the defendant's warehouse, and this was a regular part of working in the warehouse (doc. 37-4, Richardson dep. 26-27). Based upon the foregoing, the plaintiff has presented evidence showing that he was unable to perform regular daily activities, and thus was incapacitated, for a period exceeding three days. Moreover, the second portion of the test for "continuing treatment" is satisfied as the plaintiff was treated by an emergency room doctor and his primary care physician, and he was prescribed medication for pain for 15 days and medication for back spasms for five days. Accordingly, genuine issues of material fact remain regarding the plaintiff's entitlement to FMLA leave.

The defendant next argues that the plaintiff did not give adequate and timely notice of his intent to take leave under the FMLA. "An employee is mandated to provide notice to her employer when she requires FMLA leave." *Rhoads v. FDIC*, 257 F.3d 373, 382 (4th Cir. 2001). *See also Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir.1999) ("[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave."); *Rodriguez*, 545 F.Supp.2d at 515-16 ("The core requirements for triggering an employer's obligations [under the FMLA] are a serious health condition and adequate

communication, meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply."). "Once the employee has provided at least verbal notice of a serious health condition sufficient to alert the employer to the fact that the protections of the FMLA may apply, 'the employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.' " *Brushwood v. Wachovia Bank, N.A.*, 520 F. App'x 154, 157 (4th Cir. 2013) (quoting *Rhoads*, 257 F.3d at 383).

       Here, viewing the evidence in a light most favorable to the plaintiff, the defendant knew about the plaintiff's symptoms and condition immediately because the plaintiff injured his back at work, he informed his supervisor Mr. Richardson of this fact, and he was driven to and from the hospital by Mr. Richardson at the direction of Ms. Ledford. While the defendant contends that the emergency room doctor determined that the plaintiff could "return to work without restrictions the same day as his injury" (doc. 36-1, def. m.s.j. at 3), the discharge instructions actually state that the plaintiff was "discharged to home" with prescription medication and instructions to follow up with his doctor in the next couple of days. The plaintiff provided his medical records to Mr. Richardson upon their return from the emergency room, and Mr. Richardson passed the records on to Ms. Ledford. The plaintiff also told Mr. Richardson that he needed to go home after returning from the emergency room, and he called the next day to let the defendant know he was still in pain, he would be going to his doctor the next day, and he would return to work on Monday.

       The defendant argues that the "weight of the evidence favors a finding that Plaintiff did not state in his voice message that he would be out of work beyond the day he left the message, May 3, 2012" (doc. 42, def. reply at 7). The defendant notes that Mr. Richardson's notes regarding the conversation do not mention that the plaintiff notified him he would be absent beyond May 3, 2012 (*id.* at 8). However, in deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson*, 477 U.S. at 249.  Here, the plaintiff has testified that he notified Mr. Richardson that he would return to work on Monday, and thus a genuine issue of material fact remains.

The parties dispute whether or not Saturday, May 5, 2012, was a work day.  The plaintiff testified in his deposition that he does not know whether or not Saturday, May 5th was a scheduled workday, and he called no one to find out (doc. 36-2, pl. dep. 77-78).  In his affidavit, the plaintiff stated that, at the time of his termination from employment by the defendant, working on Saturdays was voluntary, and he was never told that he had to work on Saturdays (doc. 37-2, pl. aff. ¶ 4).  The defendant maintains that, prior to the plaintiff's injury, Mr. Gaddy held a meeting of all warehouse employees to inform them of a new schedule with extended hours Monday through Friday and mandatory Saturdays (doc. 36-4, Gaddy dep. 28-29; doc. 36-3, Richardson dep. 30-31; doc. 36-5, Ledford dep. 36-37).  Accordingly, an issue of material fact remains as to whether Saturday, May 5th was a scheduled workday.

The defendant argues that the plaintiff violated the no call no show policy by calling in one day for a multiple day absence.  However, the plaintiff stated in his affidavit that he had previously called in once for multiple days for a prior medical issue (doc. 37-2, pl. aff. ¶ 2).  Mr. Richardson did not recall whether the plaintiff had called in once for multiple days of missed work in the past (doc. 37-4, Richardson dep. 24).  Furthermore, Ms. Ledford  testified that calling in once for a multiple day absence was permissible (doc. 37-5, Ledford dep. 7).  Accordingly, an issue of material fact remains as to whether the plaintiff violated the no call no show policy.

The plaintiff has presented evidence that the defendant had notice of his request for medical leave.  Furthermore, the defendant had an obligation to inquire further, which it did not do.  If the employer does not have sufficient information about the employee's reason for taking leave, "[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c); *see also id.* § 825.303 (b) ("The employer will be expected to obtain

any additional required information through informal means."). No one called the plaintiff on behalf of the defendant to check on him or to determine any further basis for his absence (doc. 37-4, Richardson dep. 37; doc. 37-2, pl. aff. ¶ 7). Furthermore, when the plaintiff returned to work on Monday, May 7th, he provided his primary care provider's note that indicated he had work restrictions, was excused from work from May 2nd through May 4th, could return to work on May 7th, and required re-evaluation on May 11th (doc. 36-2, pl. dep. ex. 7). Accordingly, genuine issues of material fact remain regarding whether the plaintiff gave the defendant adequate notice of his intention to take leave.

The defendant argues that the plaintiff cannot prove that he was denied FMLA benefits to which he was entitled. Specifically, the defendant argues that the plaintiff was not entitled to reinstatement after his absence because he violated the no call no show policy. However, the plaintiff has presented evidence that he did not violate the policy as the defendant's own Human Resources Manager explained it (doc. 37-5, Ledford dep. 7). Accordingly, as genuine issues of material fact remain, the defendant's motion for summary judgment should be denied on the plaintiff's FMLA interference claim

*FMLA Retaliation*

Because FMLA retaliation claims are analogous to Title VII retaliation claims, they can be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973). *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir.2001). The plaintiff bears the burden of making a prima facie showing "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to [his] protected activity." *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998). If he makes this prima facie showing, then the defendant bears the burden of offering a nondiscriminatory explanation for its decision to terminate the plaintiff's employment, and thereafter the burden would return to the plaintiff to show that the defendant's "proffered explanation is pretext for FMLA retaliation." *Nichols*, 251 F.3d at 502.

As discussed above, issues of material fact remain as to whether the plaintiff was entitled to FMLA leave, provided adequate notice of his intent to take FMLA leave, and was entitled to reinstatement. For the same reasons, issue of material fact remain as to whether the plaintiff engaged in protected activity. Moreover, the second element of a retaliation claim is satisfied as the defendant clearly took adverse action against the plaintiff in terminating his employment. Accordingly, only the causal relationship element remains at issue.

> The plaintiff testified in his deposition as follows:
>
> Q: Do you have any reason to believe that [no call no show] was not the reason for your termination?
>
> A: No.
>
> Q: Do you have any reason to believe there was any other reason for your termination other than [no call no show]?
>
> A: No.

(Doc. 36-2, pl. dep. 111). However, in his affidavit, the plaintiff stated: "I followed the proper call-in procedure, so I do not believe this had anything to do with the termination. I believe I was terminated because I was injured at work and needed time off to take care of this injury" (doc. 37-2, pl. aff. ¶ 9).

The defendant contends that the plaintiff's affidavit does not create an issue of material fact on the causal relationship element (doc. 42, def. reply at 2). This court agrees. While the plaintiff argues that in his deposition he "simply stated he did not know the reasons why Suminoe terminated his employment" (doc. 37, pl. resp. m.s.j. at 8), the deposition testimony quoted above directly conflicts with his sworn affidavit (*compare* doc. 36-2, pl. dep. 111 ("Q: Do you have any reason to believe that [no call no show] was not the reason for your termination? A: No.") *with* doc. 37-2, pl. aff. ¶ 9 ("I believe I was terminated because I was injured at work and needed time off to take care of this injury.")). As argued by the defendant, "It is well established that '[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the

plaintiff's testimony is correct.'" *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997) (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1998)), *overruled on other grounds by Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999)

However, the plaintiff has presented other evidence raising an issue of material fact. The plaintiff argues that the necessary causal connection is shown by the temporal proximity between the defendant's receipt of his doctor's note on May 7, 2012, and the defendant telling him a short time later that he was terminated from employment (doc. 37, pl. resp. m.s.j. at 8-9). In response, the defendant argues that the necessary causal connection is not shown because Mr. Gaddy and Mr. Richardson decided to terminate the plaintiff's employment on Saturday, May 5th, two days prior to the plaintiff's submission of his doctor's note (doc. 42, def. reply at 3). However, Mr. Richardson testified in his deposition that "[i]t was probably Saturday," but he was "not 100 percent sure" (doc. 36-3, Richardson dep. 39-40). Mr. Gaddy testified that he and Mr. Richardson discussed on Saturday, May 5th, the plaintiff's no call no show and that they were going to terminate his employment (doc. 36-4, Gaddy dep. 35). However, he further testified that when the plaintiff brought in the doctor's note on Monday morning, he sent it to Ms. Ledford and discussed with her the termination of the plaintiff's employment (doc. 36-4, Gaddy dep. 36). According to Mr. Gaddy, he was told there "shouldn't be any problem with it" (*id.*). The plaintiff was terminated at 12:50 p.m. on Monday, May 7th (doc. 37-6, Gaddy email to Ledford). Accordingly, some evidence exists that the decision to terminate the plaintiff's employment was made shortly after the defendant's receipt of the plaintiff's doctor's note. Viewing the evidence in a light most favorable to the plaintiff, the undersigned finds that an issue of material fact remains as to whether his termination from employment was causally connected to his taking FMLA leave.

The defendant has offered a legitimate, nondiscriminatory explanation for its decision to terminate the plaintiff's employment - the alleged violation of its no call no show policy. Furthermore, the plaintiff has submitted some evidence of pretext, including that he followed the call in procedure as explained by Ms. Ledford; he was never written up or

reprimanded during his five years with the defendant prior to the termination of his employment including the several occasions in which he followed the exact same call in procedure (doc. 37-5, Ledford dep. 11; doc. 37-2, pl. aff. ¶¶ 2, 10); and the close temporal proximity between his leave of absence and his termination.  Accordingly, summary judgment should be denied on the plaintiff's FMLA retaliation claim.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 36) should be denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald  
United States Magistrate Judge

June 2, 2014  
Greenville, South Carolina