IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Reginald Osborne, ) | |
| ) | Civil Action No. 7:13-11-TMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Suminoe Textile of America ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff, Reginald Osborne ("Osborne"), brought this action against his employer, Suminoe Textile of America Corporation ("Suminoe"), alleging violations of the Family and Medical Leave Act ("FMLA"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, DSC, this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court deny Suminoe's motion for summary judgment. (ECF No. 44.) Suminoe has filed objections to the Report (ECF No. 47) and this matter is now ripe for review.

## BACKGROUND

Osborne began working for Suminoe as a forklift operator on October 29, 2007. During the majority of his employment, Osborne was supervised by Mr. Richardson, who was supervised by Mr. Gaddy. On May 2, 2012, Osborne reported an on-the-job back injury. Mr. Richardson drove Osborne to the emergency room. After a thorough exam, the emergency room

1

doctor discharged Osborne and instructed him to take prescribed medications for pain and muscle spasms and to follow up with another doctor in the next couple of days.[1]

According to Osborne, he provided these records to Mr. Richardson, who passed them on to Ms. Ledford, Suminoe's human resources manager. Osborne also alleges that he specifically discussed his continuing pain, the medication he needed to take, and his desire to go home with Mr. Richardson, but that Mr. Richardson instructed him to stay at work until the end of his shift.[2] Despite Mr. Richardson's instruction, Osborne clocked out and left work shortly after returning from the emergency room.

The following morning, Thursday, May 3, 2012, Osborne called and left Mr. Richardson a message informing him that he would not be at work that day due to continued back pain.[3] Osborne's message also stated that he planned to see his doctor the following day and that he would return to work on Monday, May 7. Osborne did not call and did not attend work on Friday, May 4, 2012, or Saturday, May 5, 2012.[4] On Saturday, May 5, Mr. Richardson and Mr. Gaddy decided to terminate Osborne for failure to comply with Suminoe's no call no show policy.[5]

Osborne returned to work on Monday, May 7, with a note from his May 4th doctor's visit. The note explicitly excused Osborne from work for May 2nd through May 4th, but did not

---

[1] There is much dispute about whether the emergency room discharged Osborne "to home" or allowed him to return to work right away. The court does not find this factual discrepancy relevant at this juncture, so offers no finding or opinion either way.

[2] Suminoe specifically objects to the Report's findings regarding exactly what medical records Osborne showed to Richardson and what Osborne and Richardson discussed regarding his injury. However, for the purposes of this motion, the court will review the facts in the light most favorable to Osborne, the non-moving party.

[3] There is some dispute over the exact content of the voicemail Osborne left for Mr. Richardson. However, the court views the facts in the light most favorable to Osborne, the non-moving party.

[4] The parties dispute whether Saturday, May 5th, was a scheduled work day. However, whether it was or not, Osborne's supervisors expected him to be at work that day and he did not come in and did not call to let them know that he was not coming.

[5] The record reveals a dispute between the parties over whether Suminoe's no call no show policy required an employee to call for each day he was going to be out of work or if an employee could call once for a multi-day absence, as Osborne allegedly did.

mention Saturday, May 5th.  Osborne, however, did not inform his doctor that he might have to work May 5th.  Further, although the note stated that Osborne could return to work on Monday, May 7th, his doctor limited him to lifting no more than ten pounds, required him to refrain from repetitive bending, squatting, pushing, or pulling, and provided that he would need to be re-evaluated on May 11th.  Mr. Gaddy presented the note to Ms. Ledford and they decided to go forward with Osborne's termination.  Osborne was terminated at 12:50pm on Monday, May 7th.

As a result, Osborne has brought this action against Suminoe, alleging interference with his FMLA right to job reinstatement and retaliation for exercising his FMLA rights.

## LEGAL STANDARD

The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  In making that determination, the court is charged with conducting a de novo review of those portions of the Report to which either party specifically objects.  *See* 28 U.S.C. § 636(b)(1).  Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge.  *See id.*

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law.  *Id.*

**DISCUSSION**

Suminoe objects to much of the Report's analysis. In particular, Suminoe contends that, contrary to the Report's findings: (1) Osborne was not incapacitated for more than three full, consecutive days, and thus is not entitled to FMLA leave; (2) Osborne did not provide adequate notice; (3) Osborne has not presented sufficient evidence of pretext; and (4) there is not an issue of fact regarding the causal connection between Osborne's alleged FMLA leave and his termination. The court has conducted the requisite de novo review of each of these issues and finds as follows.

**FMLA Interference**

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FLMA. 29 U.S.C. § 2615. "To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Rodriguez v. Smithfield Packaging Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008).

*Entitlement*

Department of Labor regulations clarify that the FMLA requires employers to grant leave to an eligible employee who has a "serious health condition that makes the employee unable to perform the functions of the employee's job." 29 C.F.R. § 825.112(a)(4). Under the regulations, a serious health condition that does not involve an overnight stay in a healthcare facility requires: "(1) an illness, injury, impairment, or physical or mental condition (2) resulting in a period of incapacity for more than three consecutive calendar days and (3) involving either (a) treatment

4

two or more times by a healthcare provider or (b) treatment by a healthcare provider on one occasion which results in a regimen of continuing treatment." *Rodriguez*, 545 F. Supp. 2d at 520.

Suminoe argues that Osborne's injury did not incapacitate him for more than three, consecutive calendar days, so Osborne was not entitled to FMLA leave. According to Suminoe, Osborne was incapacitated for a partial day on May 2nd, the day he injured himself, a full day on May 3rd, when he called in, and possibly a fully day on May 4th, when he saw his doctor for a follow up appointment. But, because Osborne's doctor's note does not mention Saturday, May 5th, Suminoe suggests that there is no evidence that Osborne was incapacitated on that day, and, thus, contrary to the Report's finding, there can be no genuine issue of material fact that Osborne did not suffer a serious injury and was not entitled to FMLA leave. In addition, Suminoe discounts the fact that Osborne's doctor placed limitations on Osborne that would possibly prevent him from performing his job functions. Suminoe asserts that these limitations do not change the analysis because Suminoe accommodates these types of work restrictions "for workers' compensation injuries like Plaintiff's," so Osborne would have been able to continue working for Suminoe, despite his limitations. (Objs. ECF No. 47, p. 11.)

Suminoe's position presumes that an employee is "incapacitated" for FMLA purposes only when he cannot perform any work. However, incapacity refers to the inability to "perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1)(D), which in turn is defined as being "unable to work at all . . . or unable to perform any one of the essential functions of the employee's position," 29 C.F.R. § 825.115; *see Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d 563, 569-70 (6th Cir. 2010) (finding employee created genuine issue of fact regarding incapacity despite working from home for at least one day during

5

her period of incapacity); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 861 (8th Cir. 2000) ("Upon consideration of the declared purposes of the FMLA and its legislative history, we hold that a demonstration that an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one the employee is unable to perform." (adopted by the Eleventh Circuit in *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1295-96 (11th Cir. 2006)).  Thus, Osborne could still be incapacitated, even if Suminoe could accommodate his work restrictions, if his limitations prevented him from performing his job as a forklift operator.

Further, while the court agrees that there is no issue of fact as to whether Saturday, May 5th, was a scheduled work day, it finds that there is a genuine issue of material fact regarding whether Osborne's doctor's note excused Osborne from work on May 5th.  Osborne has stated that he did not inform his doctor that he might have to work on that Saturday or that he had to work on Saturdays in general.  So, given the fact that not everyone is required to work on weekends, a reasonable jury could find that had Osborne's doctor known that Osborne might have to work on Saturday, May 5th, she would have either excused him from work on that day or allowed him to return to work on May 5th, but with the same limitations imposed on his return to work on May 7th.  Either of these findings could mean that Osborne remained incapacitated on May 5th.  Accordingly, Osborne has presented sufficient evidence that there is a genuine issue of material fact as to whether he was incapacitated for more than three days and, thus, suffered a serious health condition entitling him to FMLA leave.

*Adequate Notice*

"In measuring the adequacy of notice under the [FMLA], the Court must assess whether Plaintiff informed Defendant of (1) such facts as to make the employer aware that the employee

6

needed leave due to a serious health condition; and (2) 'the anticipated timing and duration of the leave.'" *Rodriguez*, 545 F. Supp. 2d at 516 (quoting 29 C.F.R. § 825.302(c)).  Where the need for leave was not foreseeable, the employee should give notice "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  However, the employee "need not expressly assert rights under the FLMA or even mention the FMLA, but may only state that leave is needed."  29 C.F.R. § 825.302(c).

"Once the employee has provided at least verbal notice of a serious health condition sufficient to alert the employer to the fact that the protections of the FMLA may apply, '[t]he employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.'"  *Brushwood v. Wachovia Bank, N.A.*, 520 Fed. Appx. 154, 157 (4th Cir. 2013) (unpublished) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 381-82 (4th Cir. 2001)).  Thus, in evaluating the adequacy of an employee's notice, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."  *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir. 1995).

Suminoe asserts that everything it knew about Osborne's injury at the time it initiated termination proceedings suggested that it was a relatively minor injury and not a serious health condition, so Osborne did not provide adequate notice and Suminoe had no further duty to inquire about Osborne's condition.  However, to reach Suminoe's position, the court would have to first disregard the emergency room documents attached to Osborne's affidavit in support of his response to Suminoe's motion for summary judgment.  Suminoe argues that the court cannot rely on these documents to create an issue of fact because Osborne's affidavit and the attached documents conflict with his deposition testimony.  The court has reviewed the relevant portions

7

of deposition testimony and does not find that Osborne's statements directly contradict his affidavit.

However, even if the court were to find that it could not consider the emergency room documents, which it does not, for all of the other reasons stated in the Report, Osborne has presented enough evidence to create a genuine issue of fact as to the adequacy of his notice.

**FMLA Retaliation**

To prove an FMLA retaliation claim, an employee must show that: (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) the adverse action was causally related to the protected activity. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).

Suminoe objects to the Report's use of the scheme of proof for employment discrimination cases outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), asserting that the court should, instead, rely on Osborne's deposition testimony as direct evidence that Suminoe did not retaliate against him.[6] To support its position, Suminoe cites employment discrimination cases touting the use of direct and indirect evidence to reach the final question of discrimination. However, none of the cases Suminoe cites requires a court to thrust aside the *McDonnell Douglas* framework at the hint of direct evidence on the ultimate issue. The bottom line of all of these cases is that the court cannot get inside either party's head, so it must resort to any tool available to best analyze the validity of an employee's discrimination

---

[6] In his deposition, Osborne testified as follows:
    Q.    Do you have any reason to believe that [your violation of the no call no show policy] was not the reason for your termination?
    A.    No.
    Q.    Do you have any reason to believe there was any other reason for your termination other than what's listed here?
    A.    No.
(Osborne Dep., ECF No. 36-2, p. 111.) In the court's view, while this may be direct evidence of Osborne's beliefs, it is not direct evidence determinative of the ultimate question of whether Suminoe actually retaliated against Osborne for taking FMLA leave.

8

claim, whether that tool be direct or circumstantial evidence, common sense, or the *McDonnell Douglas* framework. Here, the Report did not err in using a time-tested framework for analyzing Osborne's retaliation claim.

Suminoe also objects to the Report's findings that issues of fact remain regarding pretext and causation. The Report relies largely on the temporal proximity between Suminoe receiving Osborne's doctor's note and terminating Osborne on May 7th in making both of these findings. Suminoe contends that this reliance is misplaced because deposition testimony shows that Mr. Richardson and Mr. Gaddy made the decision to terminate Osborne on Saturday, May 5th. In terms of causation, that lessens the temporal link between Suminoe's decision to terminate and its receipt of the doctor's note more fully alerting it to the possible need for FMLA leave. And, in terms of pretext, that could strengthen Suminoe's argument that it fired Osborne for violating the no call no show policy on Saturday, May 5th.

However, Suminoe's positions on both the causation and pretext elements of Osborne's retaliation claim rely on a finding that Suminoe did not have adequate notice on Saturday, May 5th, that Osborne may have a serious health condition. Because there is a genuine issue of material fact regarding the adequacy of Osborne's incapacity and the adequacy of his notice, there are also material issues of genuine fact regarding the causation and pretext elements of Osborne's retaliation claim.

## CONCLUSION

The court has conducted a thorough de novo review of the issues raised in Suminoe's objections and finds no reason to deviate from the Report's recommended disposition. As discussed above and in the Report, the court finds that genuine issues of material fact remain

regarding elements of both of Osborne's FMLA claims. Accordingly, Suminoe's motion for summary judgment (ECF No. 36) is DENIED.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

July 30, 2014
Anderson, South Carolina